Now hear the first case on the calendar. Please proceed. Thank you, Your Honor. Good morning. May it please the Court, my name is Harry Sandick. I'm a partner at Patterson, Belknap, Webb & Tyler, and I represent Kelvin Burden, pursuant to an appointment under the Criminal Justice Act. After Burden's conviction and life sentence, he learned for the first time that the government had allowed a key cooperating witness at his trial to have relations with that witness's girlfriend in government offices with the government's permission, as an undisclosed benefit of his cooperation. Mr. Burden was persuaded to withdraw this very powerful habeas petition in exchange for a new sentence that did not keep him incarcerated for the rest of his life. However, when he was resentenced, he learned for the first time that his life imprisonment term would be replaced not only by a term of years, but also by a life term of supervised release. The life term was not part of his bargain. It hadn't been disclosed to him by the government in the sentencing stipulation. It hadn't been disclosed by the Court until the moment at which sentence was pronounced. But the possibility was stated in the PSR, right? The possibility was stated in the PSR, although there is no indication in the record that Mr. Burden, as opposed to his counsel, had knowledge. And so, similar to this Court's analysis in Showerman, we should not impute counsel's knowledge to Mr. Burden of that specific— The Court didn't ask him whether he was familiar with the revised PSR. I discussed it with his counsel. As I understand, that is not what the district court did. The district court asked counsel, have you reviewed this with your client? And the attorney said that he had. But there was no specific reference to supervised release. And so, we're in a similar position, albeit not in the— Have you reviewed this with your client, meaning the PSR? Is that right? That's right. Have you reviewed the PSR with your client? The counsel stated that counsel had reviewed it with his client. But there's no record evidence that Mr. Burden actually knew about the term of supervised release. And in that sense, the case is similar to this Court's decision in Showerman from back in the 90s, when the Court explained in the analogous context of a guilty plea that the Court would exercise considerable caution before finding that no omission from the Court's advice to a defendant was harmless, and specifically said that we ordinarily do not consider an understatement of the maximum authorized penalty to be harmless. We're dealing with a plain error test here, but much of the language in Showerman seems to continue in this Court's decisions, even as recently as in 2013 in a case called Yang Chia Tian. The Court continued to talk about the standard of strict adherence and the examination of even slight procedural deficiencies. And we think based on that, Mr. Burden should have the same opportunity the defendant had in Showerman to make a decision with this Court's permission as to whether he would rather abandon the stipulation or consent to be sentenced under it. Isn't it a difficulty for your position that this is a plain error issue? And that it's hard to really say even that the error is plain, given that we're not in a strict Rule 11 context here. Well, that is an obstacle for our argument. But whether we're in a strict Rule 11 context or not, even in Wellington, which the government cites, there still has to be a knowing and voluntary entering into the agreement. And so even if the Court declines to extend all of the panoply of Rule 11 to this context, to not know of the sentencing consequences is a serious defect. And in fact, the district court, for all intents and purposes, did approach this with the same type of rigor and care that she might have approached the Rule 11 proceeding, except for this, except for supervised release. And so Mr. Burden's in a position where he could be 70 years old and still subject to house searches. That if his grandson has a marijuana joint in the kitchen drawer, Mr. Burden could be facing a violation proceeding in his old age. That's what he's trying to avoid here. And that's why we also have argued in the alternative that to impose a life sentence of supervised release above the guidelines range, without any real explanation on the record, is on the facts here, procedurally unreasonable. And that at a minimum, we should go back to the district court. You're not contending that he had no idea that supervised release could be imposed on this re-sentence, are you? Well, there's no record evidence that he knew that it was part of the bargain that he had reached with the government, or that it was something that the court was considering imposing. In his original sentence, he didn't get any supervised release because he had a life term of imprisonment, so it wasn't raised. But the memorandum that was filed on his behalf for re-sentencing asked that he be sentenced to 262 months, followed by a term of five years supervised release. So clearly, somebody knew that supervised release was on the table. There's a question of how much that could be. And on page one of the pre-sentence report, it recommended, or it said he was subject to ten years to life supervised release. We don't take any issue with anything that your honor has just stated. The question really is whether it's appropriate in light of Showerman to impute counsel's understanding and evidence, perhaps if the district court had said, did you review the PSR and are you aware of everything it says, and he said yes, this would be a different appeal. Certainly, had there been some reference, let's say, in the stipulation, it might have been a different appeal. Although, we would point out that even in Showerman, there was reference to restitution in the plea agreement there. And this court still found that there's no substitute for a judge looking a defendant in the eye and saying, you face this potential penalty. And concluding that if that isn't done, there's an important defect and that valuable rights are being given up. Now, Showerman was a harmless error case, wasn't it? That's true, but this court has continued to use Showerman type language in plain error cases. So, in the case of United States versus Yang Chia Tien at 720 F3rd 464 with a pin site, I think at 471. The court, just to quote from the opinions, says, in finding plain error, we note that this circuit has adopted a standard of strict adherence to Rule 11. And therefore, we examine critically even slight procedural deficiencies to ensure that the defendant's guilty plea was voluntary and an intelligent choice and that none of the defendant's substantial rights has been compromised. That's Showerman-like language. It doesn't cite Showerman, but it talks about the standard of strict adherence and the concern that even slight procedural deficiencies can give rise to problems in this context. Now, Mr. Burden had a very persuasive habeas petition. Without reading the government's mind, they were willing to back off of the life sentence that they had obtained after trial based on that petition. He could have negotiated the deal with a cap on supervised release, just as he did with a cap, negotiate something with a cap on the term of years. We don't know, but it was never put before him by the district court. I mean, it's a high bar, isn't it? I mean, if you look at Dominguez Benitez, right? You have to satisfy that a defendant must satisfy the judgment of the reviewing court informed by the entire record that the probability of a different result is sufficient to undermine confidence in the outcome of the proceeding. Yes, and this court has explained that that is a reasonable probability standard. And here we think that there is a reasonable probability that he might not have entered into this agreement. Not that he wouldn't have wanted to get out from under the life sentence, but that he would have negotiated for something other than what he ultimately received, given the valuable rights that he gave up by abandoning this habeas petition with these very salacious and damaging allegations about, very serious allegations about the government's conduct. Is it your view, just so I'm clear, that when there is a successful Rule 11 challenge, I know this is not precisely a Rule 11 challenge, that vitiates an appeals waiver? We do think that the appeal waiver does not apply to this context. And that's because if the guilty plea wasn't voluntary and knowing, then the plea agreement should drop away. And so translating that from the Rule 11 context to this very analogous context, we don't think that the appeal waiver serves to bar a challenge to the knowing and voluntary nature. I think even in the straight plea agreement context, and I don't know that I have a sight right at my fingertips, but even in the plea agreement context, if the plea was bad, the appellate waiver can't save the plea. Now, a question that I also would like you to help me with is, if you look at 18 U.S.C. 3553 C2, that requires sentencing courts, as you know, to state in open court, I'm quoting, the specific reason for the imposition of a non-guideline sentence. You don't make that argument, do you? Is there any reason not to make it? There's no reason not to make it. I mean, we frame it as a matter of procedural reasonableness that the court has the obligation encapsulated in 3553 C2, not just to state the reason, but to link the reason to the sentence. And here, the district court gave a long explanation about the reasons for her sentence of imprisonment, relying very heavily on, understandably, the serious nature of what my client was convicted of doing, which we can't abandon. But supervised release looks to more than just the seriousness of what you have done. The sentencing commission says the purpose is to facilitate the integration of offenders back into the community, rather than to punish them, and so here, there was no consideration as to whether life-supervised release. I mean, the statistics are all very clear that as people get older, ordinarily, there are exceptions, of course, but ordinarily, the likelihood of crime goes down, and we're going to have a situation in this country in 10 or 20 years with all of these life-supervised release of essentially pensioners being subjected to house searches and potential revocation proceedings. It doesn't really make any sense from a policy perspective, and that's why procedurally, it doesn't hold up. There should have been some individualized attention, but we agree that the failure to pronounce a reason for this sentence would also be an independent basis. We, I think we see it as being a piece of the procedural reasonableness argument. Thank you, Your Honor. Good morning, Your Honors. It's going to take me a minute to, there we go. My name is Marcia Taubenhaus, and I represent Jermaine Buchanan. And I'd like to look at this in a slightly different way, which is, regardless of whether it was appropriate to put in a supervised release term under the terms of the stipulation, the judge was limited to the term that the defendant agreed to, which was 365 months. We wouldn't be here if the judge had sentenced him to 200 and something years plus supervised release that met the cap. And if you look at the statutes, and you look at the language of this court, I think it's at least ambiguous, although I think it's pretty clear, that supervised release, unlike other things like restitution, for example, is part of the sentence of imprisonment. If you go to, excuse me, I'm going to have to take off my glasses, 3583A, it says the court, and this is the supervised release statute, the court in imposing a term of imprisonment may include as part of the sentence supervised release. Compare that with the restitution statute, which is 3663A, and it describes the court's ability to give a penalty in addition to a term of imprisonment. So at the very least, my client was entitled to assume that the sentence they were talking about was 365 months in total. And I'll also cite this court to Saski, where this court said, this opinion concerns only a challenge to a condition of supervised release included as part of a sentence of ten years and one month. So as part of the imprisonment sentence, the judge is entitled to order supervised release. Is there an objection to the pre-sentence report's statement that your client was subject to five years to life supervised release? Well, he is. I mean, that's what the statute says. But the guideline that they mentioned in the PSR was five years. And five years, as I said, depending on the incarceration sentence the judge imposed, could have fit within the stipulation. So there was no objection to the PSR's statement in this regard? No. But I would remind the court that there was no supervised release in the first sentencing, that supervised release was not mentioned. And I think it's fair to say that everyone, including the prosecution, that their focus was elsewhere. So it's understandable why it didn't become a topic of discussion. It was certainly something that the prosecution could and does on occasion include in their agreement. And I also want to stress that this was not a guilty plea. And this was not a sentencing deal. I mean, this was not a deal where the client is facing a trial where he is the presumed wrongdoer and the government comes in with clean hands. Did he not file a 2255? He didn't. Asking for a retrial? Right, but the stipulation, he is not in the same position as a defendant who's facing a trial. In this case, it was the government's wrongdoing that brought the parties into court. And I think that puts it in a very different position, particularly in light of the appeal waiver. Because there's something fundamentally wrong with an appeal waiver that allows the wrongdoer to pursue appeals, continue to get relief in court, whereas the person who was wronged is precluded from judicial access. So I would urge the court not to expand one-sided appeal waivers to this context. They're already sui generis for plea deals. They don't exist elsewhere in the law. Elsewhere in the law, judicial access is supposed to go both ways. But in this one exception, we allow them for plea deals. But- If we were to interpret the waiver, construe the appeals waiver to extend only to the incarceratory terms of your client's sentence, wouldn't that then mean that your various challenges, for example, to the guidelines calculation and the substantive reasonableness of the prison term, would that mean that they're waived? Yes, Your Honor, although our position is that there was a breach of the agreement. So the appeal waiver would not apply because he got sentenced to a higher sentence than he agreed to. And so the waiver would not apply in any case. And that's on the theory that the 262 to 365 months includes whatever term of supervised release is imposed. Exactly, I'd like to switch, unless you have more questions in this regard, to talk about what I view as the troubling philosophical issue in this case, which is you had two fellows who did very, very terrible things many years ago. They go into prison. They do everything that society could ask of them. They're model prisoners. They find meaning in life. Every party, the government, the court, the defense, all concede that these guys were fantastic. And that they're not the same people that they were when they were sentenced. But the district judge's position was that, yeah, but they're in prison. Who knows what they're going to do when they get out of prison? And if you take that to its conclusion, what that says is that a defendant in prison can never prove that he's rehabilitated. And on a number of levels, it seems just unjust to me. And against the premise that we usually go on, which is that the parsimony clause, the rule of lenity, the benefit of the doubt is supposed to go to the defendant. You are not supposed to assume that he can never be redeemed. Otherwise, you just have to say rehabilitation doesn't exist. And- Now for our, where we are on review, I understand your concerns. You're saying that because your client didn't have notice that he would face supervised release, that we should not apply a plain error standard, is that correct? Well, I argue that a relaxed plain error standard, which is what is usually done when there's no notice. It's not, I can't actually describe what it is that the court does with a relaxed plain error standard, but I assume that it's just you don't require as much proof of- I mean, in the Rule 11 context, you've got Dominguez Benitez, which seems quite unequivocal with respect to unpreserved Rule 11 objections, right, that the plain error standard applies. First of all, this is not in the plain rule 11 context, and I would note that when it's in the government's benefit, they have also argued that this is not a Rule 11 context. And I don't have the memory that my colleague does to cite your cases, but in my brief, I have cited a number of cases that apply the relaxed plain error rule to very, very similar situations here. Thank you. Can I ask just one other question? Sure. Assuming we get past the appeal waiver and we're looking at the plain error standard and what happened in the sentencing context, it disturbs me particularly with regard to your client that a lot of the focus of the district court seemed to be on the seriousness of his misconduct. Even if we don't believe that a district court has to separately address the term of imprisonment and supervised release, it's my understanding that in the context of supervised release, we don't focus on retribution. We're focusing on deterrence and the safety of the public. And if you could address whether you think that would be a plain error that occurred in your client's sentencing. Yes, because that is explicitly excluded from the supervised release. And it's taking it one step further because she didn't actually discuss it in terms of supervised release. We are trying to extrapolate from her sentence in general. And it would seem to me it's plain error when you're going that far above the guidelines to not explain specifically why such a long term of supervised release is required, why a fellow in his 80s and 90s would need to be surveyed that way. And as my colleague said, it's important to remember supervised release is not a minor impediment, particularly for guys that have been in jail for as long as these guys. They're coming out with no money. And they're supposed to, if necessary, pay for mental health, pay for drug treatment. And if you take away the seriousness of the crime, there really is no basis for giving it. It also is, as I understand it, that the district court occurred in imposing special conditions without. Special conditions that weren't applicable. Without excluding. Yeah. OK, I see I'm over my time. I have one more thing to say, but I'll save it for later. Thank you. Morning, Your Honors. I just want to make a couple of points before I try to respond to some of the questions that have already been asked. First of all, I did handle the habeas. I wasn't trial counsel. And I can tell you that this settlement was motivated and driven by the defense. They, from the beginning, requested the government consider some form of relief that allowed for a new sentencing and not a new trial. And that drove everything. And you can see on the docket sheet, if you pull up all the status letters that they docketed and the telephone status conferences that were on the record, that that was their goal, their concern. And they were trying to do everything they could to convince both the government and the district court to consider some remedy that would permit a sentence below life and, frankly, of 365 months or less.  recognizes that this court prefers and, frankly, enforces waivers limited to what they say. And so if an appeal waiver is not specific, it won't bar a challenge to something like supervised release. Our contention simply is that this waiver was broad. It was explicitly broader than the waiver in Oladimehi. The case I can't seem to pronounce, Oladimehi. And so the court does have the option of recognizing that. If the court chooses to enforce the waiver in a more narrow way, the government's position would be then the review would be limited to the procedural reasonableness of supervised release. But I do want to make one point about the Rule 11 issue and about shop. I'm sorry. How do you respond, though, to the argument that the appeal waiver at issue here is silent with respect to supervised release? The answer is it is. Our response would be when it says any alleged error, so it's reproduced, I think, on page 19 of my brief, any alleged error in connection with the recent sentencing. And then it goes on. It doesn't just say that. It goes on to say in connection with the conviction, the request for a new trial. The part- Wouldn't that be an error, though, in, let's say, if we're in the plea context? Wouldn't it be an error not to explicitly discuss supervised release? I think so, sure. In the Rule 11 context, it would be. Our contention, Your Honor, is that this was not a Rule 11. Why not? Isn't this a highly analogous context? I think it is an analogous context. The reason it's different, there's two primary reasons. The first reason is that unlike a Rule 11 plea, where you canvass the person. You say, this is your chance to, you know, you have a decision to make before you. And then when you get to sentencing, you don't permit a person to withdraw their plea. Here, what you had Judge Hall do is she canvassed them in October of 2014. Then she said, I'm not going to accept one way or the other, orders the PSR to be amended. The PSR comes out with all of the supervised release terms spelled out. Then at the start of the March hearing, the judge, in two different times, says to both petitioners, do you want to go forward with this? And explicitly gives them the chance to withdraw from the stipulation. And so that really does take it out of that. You don't, that's not a Rule 11 phenomenon. We don't. It doesn't apply formally, of course, I understand that. But don't the stipulations themselves provide, and I'm talking about in the appendix, Burdens Appendix 461, Buchanan's 197, don't they say that the stipulations, if accepted, constitute binding agreements under Rule 11? Yes. They do cite Rule 11, Your Honor. So you're saying that Rule 11 doesn't apply. You yourself agreed, unless I'm misunderstanding, in the stipulations that it did apply, at least in some respect. I think that's correct, Your Honor. I fully concede that there's parts of Rule 11 we explicitly invoked. What I'm trying to point out, Your Honor, is that the goal here, I think it's Wellington that this court says it, but what the court should be looking at, I think, is that was the stipulation entered into knowingly and voluntarily? In other words, we don't have defendants who are pleading guilty. They never pled guilty. They maintain their innocence to this day. They were found guilty by a trial, by a jury. And so they're not giving up constitutional rights at all. There are things about the stipulation that are similar to Rule 11. But in the government's view, where the similarity is, simply that the court needs to canvas both defendants to make sure they know what they're doing, and they're doing it voluntarily. Assuming for just a minute that we construe the appeal waiver narrowly, and we get to the merits, and then let's assume for just a minute, again, that we agree with you that, at least with regard to how Rule 11 would apply here, any error was not plain in that context. And we had counseled petitioners, and they had the stipulation. They had the PSR. The record may not affirmatively show us that they were focused on supervised release, but it's not a plain error. How about the next level? And that goes to, at the sentencing, I mean, at the re-sentencing, there did seem to be a focus by the district court on the seriousness of the offense. And the statute itself says that retributive interests are not at stake with regard to supervised release. And that could be an error that you could think of as being plain here, that might require a re-sentencing. Am I wrong about that? No, Your Honor. I think, in the government's view, there's two things the court would have to agree with to affirm on a procedural basis the supervised release. First, the first proposition is that you can consider her comments in totality to support the supervised release term. If the court is in agreement on that, then our argument, the second part of that would be, we have to look at all of her comments. I think what she's doing is not just justifying the life term of supervised release. She's justifying a sentence at the top of the stipulated range. And so those comments, I think, go to that. We had a videotaped statement presented by Markee Young, who was in a hospital, essentially has been in medical care, was from a hospital room, so many years later. So I think her statements about the seriousness of the offense go to that. I think when we look at justifying the term of life for supervised release, I think it's her other statements that we can look at where she says explicitly, I've heard all of this information about you. I've seen some of the things you've done. But still, as I sit here today and as I review all the things you did back then, I don't have confidence that this is the end. I am concerned that you'll re-offend. And those comments, and I'm paraphrasing to me, support her concern about not just a long term of supervised release, but one with specific conditions. The conditions that she orders do have to be supported, certainly, but also can be used by the court to infer the concerns. In other words, a blanket term of supervised release with no special conditions versus this term. This term, she puts in the special condition of mental health and drug treatment. She puts in the special condition of being subjected to reasonable suspicion searches. And she puts in the special condition about firearms. I think you can infer from those conditions that when she talks about the seriousness of the offense, what she's saying is she's worried that they're going to re-offend. I get the concern about, hey, we don't want somebody being on supervised release for the rest of their life. As a practical matter, I get requests to terminate long terms of supervised release all the time. So the district court has the discretion after any number of years to simply say, I'm going to terminate your supervised release based on how you've done. What Judge Hall is doing is saying, as I sit here today, as I'm being asked, and I think the big context that's missing here is the ask of the district court, and frankly, the ask of the government, was enormous here. As the district court pointed out, had they been successful in their habeas and achieved a new trial on the drug counts alone, which were largely supported by wiretap evidence, they would still be looking at guideline ranges of 360 months to life and still be looking at all the relevant conduct. Here, though, the terms of incarceration are within guidelines or below guidelines. But the terms of supervised release are way above the guidelines. So in that context, I mean, I understand your rationale  I understand that rationale. It makes sense to me in theory. But where you have this circumstance where some part is within or below, and then that which is not explicitly discussed is above guidelines, then it seems to me that there's at least some question whether looking at the whole rationale that you're talking about may raise some questions. I agree with your honor. Where I disagree is the idea that this was somehow a guideline sentence. The reason the guidelines were lower is because the government dismissed the most serious acts and recognized in the dismissal, there was no suggestion that the dismissal was because of a lack of evidence. So the government dismisses the Vicar Count against Mr. Burden and the act of racketeering, which was the Vicar against Mr. Buchanan, which otherwise would have required a mandatory life or a guideline life. And Judge Hall twice had been asked to review Mr. Buchanan's sentence of life as a guideline sentence and refused twice to resentence him under Regalado and, I think, Crosby. So what I'm getting at is the sentence of 365 months, and Judge Hall infers this. I think it's at page 707 of Mr. Burden's appendix. When she's asked about the credit issue on Mr. Burden, she says, listen, if you're asking me to accept this binding range and to impose an incarceration term within it, part of the reason I didn't give him that credit, which he's not really entitled to, is because I viewed that those months as that would be too low of a sentence. And so she's coming off of a life sentence. And in the context of coming off of a life sentence, she's made the decision that, well, if I'm going to come down from life unimprisoned, then I'm going to essentially put a supervised release term in place that's longer than the guideline range. She didn't make that explicit. I'm not contending she did. All I'm trying to suggest is that the court would have to be able to say, OK, we can look at all of her comments in a totality to support her decision on life supervised release. How would you distinguish this case from Cunningham? I confess as I sit here today, Your Honor, that I don't have that. The 2002 case, and there, just by way of background, the defendant agreed that he wouldn't file an appeal or otherwise challenge his conviction or sentence in the event that the court imposed the time served. Then the district court sentenced the defendant to time served, but also imposed a two-year term of supervised release. And although the waiver read literally, quoting more or less from the opinion, would have barred the defendant's appeal of a supervised release term, the court reasoned that because the defendant was not sentenced solely to the time served, the court could not say that the defendant waived his right to appeal the length of his term of supervised reliefs. And so I'm trying to figure out how this case is distinguishable, because here the defendants agreed not to challenge their sentences if they were sentenced to between 262 and 365 months imprisonment, but they were not sentenced solely to the terms of imprisonment. Well, Your Honor, I think the response to that would be, and I now find Cunningham, is it would require the court. So in both Cunningham and the case I can't seem to pronounce, Oled Mehi, thank you, they both used the word sentence. In other words, not to appeal his sentence was the language of the waiver. And our contention, is our waivers broader? Is it broad enough? I guess that's a question for the court. But our contention is it's certainly broader than what you had in Cunningham, in the sense that the attempt by the parties, and certainly if hindsight's 20-20, if we go back in time, we could certainly make it broader. But the point of when you read that section is any alleged error in connection with the resentencing itself, the hate, I'm paraphrasing, but the parties were. No, I think that's literally what it says. Any alleged error in connection with the resentencing itself. So it's broader. Is it broad enough? I guess is the question that's open. Our contention is that it is. But if it's not, then your review would not be to allow Mr. Burden to pull out of the stipulation. It would not be to allow Mr. Buchanan to start challenging individual guideline findings in the PSR. It would simply be, did Judge Hall sufficiently justify her sentence of life of supervised release? And so that if there were a remand, it would be on that issue alone. Thank you. Thank you. I'll be brief. Just on the last point, although one could construct a rationale to have a different rule from the circuit's rule, the circuit's rule is essentially that unless the waiver specifically mentions the supervised release, incarceration, restitution, whatever the element is, it doesn't expand to cover that. That the breadth of the waiver here doesn't save it from being in the same category as Cunningham or Oladimeji. And that what was missing from the waiver here was a specific reference to supervised release. The other point that we would make is that on the subject of the application of Rule 11, I think the government said these weren't constitutional rights. But really, the habeas petition did invoke constitutional rights. Brady Jiglio violation, serious undisclosed Jiglio 3500 type material about one of the government's key witnesses. So if the question is going to be, are constitutional rights implicated, they are. And we think this case is a useful vehicle for the court to clarify that maybe Rule 11 doesn't apply to a stipulated bench trial like in Wellington, but it should apply in this context or in the context of a post-conviction sentencing stipulation or really any place where a defendant is doing Rule 11-like things. We're happy to answer other questions, but otherwise we rest in our papers. Yeah. I'd just like to quickly say that the notion that a defense attorney would not be thrilled to retry a 20-year-old case where the key witness has been called a liar and not just on the perks but on substance by the court, where regardless of what they had with wiretap evidence, I can't imagine any case where you could say, yeah, of course they're going to win on retrial, even though it was over 20 years ago since the last trial and the judge said that it would take about three years to get this case in a shape to be retried. So now we're talking close to 25 years. And I think, legalese aside, a realistic view, there is no case that's a slam dunk 25 years later. A couple of small points. My client did concede that he was guilty. He expressed remorse, and he apologized to the court, and he accepted responsibility. And Judge Livingston, in terms of the part of the agreement that says it applies to any error at sentencing, it applies to any error at sentencing if the promises that were part of the stipulation are met. And they weren't met here, because he was given a sentence that was more than what he had bargained for. One thing I just want to mention on the substance of resentencing is the government says that because of the one book rule, that the fact that the Vicar counts had higher guidelines under the more recent guidelines that the Vicar that would preclude our argument. I would point out that the guidelines reducing the drug sentences are retroactive. It doesn't matter which book you use. The old book and the new book are both governed by those retroactive changes. So had she used the proper guideline rules that did not raise his sentence, it would have ended up being a lower sentence. Thank you. Thank you. Thank you all for your arguments. The court will reserve decision.